UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dylan Miles,<br><br>           Plaintiff,<br>   v.<br><br>**New York-Presbyterian Hospital,** Dr. Asad R. Siddiqi, DO, Mike Mizrahi, Dr. Daniel Jung Pak, and Magali Lopez.<br><br>           Defendants. | **JURY TRIAL DEMANDED**<br><br>Civil Action |

   Plaintiff, Dylan Miles ("Miles"), by and through herself Law Offices of P, PLLC, complain of the Defendants, **Dylan Miles, New York-Presbyterian Hospital,** Dr. Asad R. Siddiqi, DO, Mike Mizrahi, Dr. Daniel Jung Pak, and Magali Lopez.

### Nature of the Action

This is a civil action for monetary damages, punitive damages, and compensatory damages, is brought by Plaintiff Dylan Miles to redress <u>sexual orientation and negligent pain management treatment, illegal procedures, and discrimination by employees at NYPH</u>

  On the basis of sexual orientation and gender identity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq. ("Title VII") and the New York State Human Rights Law, the New York City Human Rights Law, and the New York Executive Law §§ 290 et. seq. committed a tortious act within the state (CPLR § 302(a)(2)); and/or (iii) committed a tortious act within the state causing injury to person or property within the state, and (a) regularly does or solicits business, or engages in any other persistent course of conduct, in the state (CPLR § 302(a)(3)(i)) or (b) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate commerce (CPLR § 302(a)(3)(ii)). Further, the incident at issue here occurred in this district.

   1.

   2.   Defendants' discriminatory conduct was intentional, knowing, malicious, willful and wanton and/or showed a reckless disregard for Dylan Miles, which warrants an award of punitive damages, and which caused and continues to cause him to suffer substantial economic and noneconomic damages, permanent harm, sever mental anguish, emotional distress, elongating her chronic pain condition, botching an epidural, and illegal procedures.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under Title VII. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. § 139(a)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

1. This Court has personal jurisdiction over Defendant **New York-Presbyterian Hospital,** Dr. Asad R. Siddiqi, DO, Mike Mizrahi, Dr. Daniel Jung Pak, and Magali Lopez. pursuant to CPLR § 301.
2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because, upon

information and belief, Jesus resides in this District and NYPH resides in this District (as that term is defined in 28 U.S.C. § 1391(c)) and/or pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action have occurred in this District.

2

**Facts**

12. In 2021 and 2022, Plaintiff Miles began receiving treatment from NYPH Who illegally discriminated against Mr. Miles based on his sexual orientation, miss managed Ms. Miles pain management, intentionally botched one procedure, intentionally make him suffer with his chronic pain conditions by not prescribing the appropriate medications, stopping a narcotic without titration, mishandling Ms. Miles complaints to the appropriate departments at NYPH patient services and absurd behavior by all employees of NYPH and its affiliates. Ms. Miles suffers from numerous chronic pain conditions. Dr. Siddiqi called Ms. Miles a "tranny" every time Ms. Miles was alone with Dr. Siddiqi and when he administered trigger point injections, he always called me a "Fagot." Suddenly Ms. Miles was told by Dr. Siddiqi's front office while in person at the practice that he needed to find a new pain management doctor (Ms. Miles was prescribed Tramadol by Dr. Siddiq for 8 months or more) although Ms. Miles was there for an epidural to be performed by Dr. Mizrahi. Ms. Miles was then told by the front office staff that he could choose from a list of four

medications that Dr. Mizrahi had on file for his patients. Ms. Miles refused as she had never seen Dr. Mizrahi for an in-person office visit or any visit and that Ms. Miles wanted a diagnosis before given medications for her chronic pain. When Ms. Miles had his epidural this day Dr. Mizrahi would called Ms. Miles a "tranny fagot," while and where nobody could see or hear prior to Ms. Miles epidural. This was a common occurrence every time Ms. Miles went in for an epidural. Ms. Miles began to cry and explained to Dr. Mizrahi that she wouldn't tolerate this behavior and needed pain medications. Dr. Mizrahi became enraged and said "Do you still want the epidural tranny?" I said yes, and want to note that when you play the recording of the 2nd epidural Dr. Mizrahi performs he notes that the tube is broke indicating a failed procedure to inflict intentional pain via an intentional unsuccessful epidural. Regardless the third epidural I asked on the recording if the broken tube was the reason the 2nd epidural didn't work and Dr. Mizrahi said no. A week later I had a zoom video conference with Dr. Mizrahi. I explained the medication he prescribed was ineffective so he recommended I try THC and that Ketamine was a good idea. I tried to get on these medications that Dr. Mizrahi recommended but because I live in poverty, I told Dr. Mizrahi through the NYP app that I could not get on these medications because of the cost and that I needed a medication that was covered by my insurance. I noted that I was suffering and that the pain effected my brain function. Dr. Mizrahi noted all of this and acknowledged my pain and suffering and stated he couldn't help me. Ms. Miles is not currently on a single medication that works for his chronic pain. When Ms. Miles complained to patient services Magali Lopez kicked me out of the practice the day after I lodged the complaint that was endorsed by Emily Tan. Emily told me through an email that Magali Lopez endorsed my complaint.

I found a new doctor in Dr. Daniel Jung Pak. He told me on the zoom video call we had that he was going to prescribe Naloxone for me but doesn't notate this anywhere because it doesn't make sense and so when I complained to the appropriate department, I asked to have the video zoom call reviewed and disciplinary action taken and I have heard nothing. Dr. Pc was passively making fun of my condition and elongating my suffering.

Upon information and belief, the doctors' issues with Ms. Miles stemmed from his actual or perceived sexual orientation and gender identity. During his treatments, the doctors asked Ms. Miles why he was named ALI, a Muslim, a tranny, and dressed like a girl.

It is clear that the doctors wanted Mr. Miles to be remain in pain based upon his sexual orientation and gender expression. The doctors expressed aggression and hostility towards him during the entire course of his treatment but only in person and in private. NYPH. Indeed, as part of their scheme to make Ms. Miles suffer with his chronic pain.

Upon information and belief, the doctors send reports to management at 38 6th ave in Brooklyn NYPH, attempting to build a case to prevent Ms. Miles from obtaining medication for his pain appropriate based diagnosis. upon false and misleading evidence. Dr. Mizrahi is contradicting all his statements in the NYP app.

It is clear that Ms. Miles performed completely under the terms of his agreement with NYPH, and that the actual reason he was wrongfully managed was his actual or perceived sexual orientation and gender identity and in retaliation to Mr. Miles being Trans.

3

**THE PARTIES**

5. Dylan Miles is an LGBTQIA+ individual living in New York County, City and State of New York (hereinafter MILES).

6. MILES was born a biological male and identifies as a woman.

7. MILES wears clothing that is traditionally worn by women.

8. MILES is in the process of transitioning into a woman and is undergoing hormone treatments, and other transitions including coming out to her friends and family, asking people to use pronouns that match her gender identity, dressing and grooming in ways that match her identity, and laser hair removal.

Defendant **New York-Presbyterian Hospital,** Dr. Asad R. Siddiqi, DO, Mike Mizrahi, Dr. Daniel Jung Pak, and Magali Lopez.
, Inc. is a corporation duly organized and existing under the laws of the State of New York, with its principal place of business is 466 Lexington Avenue, 13th Floor Box 36 Ny, Ny 10017

9. Ny

Defendants **New York-Presbyterian Hospital,** Dr. Asad R. Siddiqi, DO, Mike Mizrahi, Dr. Daniel Jung Pak, and Magali Lopez.

10. Is a corperation and individuals who, upon information and belief, is a citizen of the State of Ny.

Defendant **New York-Presbyterian Hospital,** Dr. Asad R. Siddiqi, DO, Mike Mizrahi, Dr. Daniel Jung Pak, and Magali Lopez.

11. is officer, shareholder and employee of NYPH, who participated directly in the discriminatory, wrongful decisions and wrongful actions taken against MILES.

12. A copy of this Amended Complaint was/ will be served on the City of New York Commission on Human Rights and the Office of Corporation Counsel of the City of New York, thereby satisfying the notice requirements of § 8-502 of the New York City Administrative Code.

4

13. Any and all other prerequisites of the filing of this suit have been met.

## **FACTUAL ALLEGATIONS**

Who illegally discriminated against Mr. Miles based on his sexual orientation, miss managed Ms. Miles pain management, intentionally botched one procedure, intentionally make him suffer with his chronic pain conditions by not prescribing the appropriate medications, stopping a narcotic without titration, mishandling Ms. Miles complaints to the appropriate departments at NYPH patient services and absurd behavior by all employees of NYPH and its affiliates. Ms. Miles suffers from numerous chronic pain conditions. Dr. Siddiqi called Ms. Miles a "tranny" every time Ms. Miles was alone with Dr. Siddiqi and when he administered trigger point injections, he always called me a "Fagot." Suddenly Ms. Miles was told by Dr. Siddiqi's front office while in person at the practice that he needed to find a new pain management doctor (Ms. Miles was prescribed Tramadol by Dr. Siddiq for 8 months or more) although Ms. Miles was there for an epidural to be performed by Dr. Mizrahi. Ms. Miles was then told by the front office staff that he could choose from a list of four medications that Dr. Mizrahi had on file for his patients. Ms. Miles refused as she had never seen Dr. Mizrahi for an in-person office visit or any visit and that Ms. Miles wanted a diagnosis before given medications for her chronic pain. When Ms. Miles had his epidural this day Dr. Mizrahi would called Ms. Miles a "tranny fagot," while and where nobody could see or hear prior to Ms. Miles epidural. This was a common occurrence every time Ms. Miles went in for an epidural. Ms. Miles began to cry and explained to Dr. Mizrahi that she wouldn't tolerate this behavior and needed pain medications. Dr. Mizrahi became enraged and said "Do you still want the epidural tranny?" I said yes, and want to note that when you play the recording of the 2nd epidural Dr. Mizrahi performs he notes that the tube is broke indicating a failed procedure to inflict intentional pain via an intentional unsuccessful epidural. Regardless the third epidural I asked on the recording if the broken tube was the reason the 2nd epidural didn't work and Dr. Mizrahi said no. A week later I had a zoom video conference with Dr. Mizrahi. I explained the medication he prescribed was ineffective so he recommended I try THC and that Ketamine was a good idea. I tried to get on these medications that Dr. Mizrahi recommended but because I live in poverty, I told Dr. Mizrahi through the NYP app that I could not get on these medications because of the cost and that I needed a medication that was covered by my insurance. I noted that I was suffering and that the pain effected my brain function. Dr. Mizrahi noted all of this and acknowledged my pain and suffering and stated he couldn't help me. Ms. Miles is not currently on a single medication that works for his chronic pain. When Ms. Miles complained to patient services Magali Lopez kicked me out of the practice the day after I lodged the complaint that was endorsed by Emily Tan. Emily told me through an email that Magali Lopez endorsed my complaint.

I found a new doctor in Dr. Daniel Jung Pak. He told me on the zoom video call we had that he was going to prescribe Naloxone for me but doesn't notate this anywhere because it doesn't make sense and so when I complained to the appropriate department, I asked to have the video zoom call reviewed and disciplinary action taken and I have heard nothing. Dr. Pc was passively making fun of my condition and elongating my suffering.

Upon information and belief, the doctors' issues with Ms. Miles stemmed from his actual or perceived sexual orientation and gender identity. During his treatments, the doctors asked Ms. Miles why he was named ALI, a Muslim, a tranny, and dressed like a girl.

It is clear that the doctors wanted Mr. Miles to be remain in pain based upon his sexual orientation and gender expression. The doctors expressed aggression and hostility towards him during the entire course of his treatment but only in person and in private. NYPH. Indeed, as part of their scheme to make Ms. Miles suffer with his chronic pain.

Upon information and belief, the doctors send reports to management at 38 6th ave in Brooklyn NYPH, attempting to build a case to prevent Ms. Miles from obtaining medication for his pain appropriate based diagnosis. upon false and misleading evidence. Dr. Mizrahi is contradicting all his statements in the NYP app.

It is clear that Ms. Miles performed completely under the terms of his agreement with NYPH, and that the actual reason he was wrongfully managed was his actual or perceived sexual orientation and gender identity and in retaliation to Ms. Miles being Trans.

**FIRST CAUSE OF ACTION**

**FIRST CAUSE OF ACTION (New York Executive Law § 296(2)(a))**

Plaintiff repeats and realleges the allegations of paragraphs 1 through 24 above. New York State Executive Law § 296(2)(a) provides, in relevant part, as follows:

It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation, resort, or amusement, because of the ... sexual orientation, gender identity or expression ... to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities, or privileges thereof ... to the effect that any of the accommodations, advantages, facilities, and privileges of any such place shall be refused, withheld from or denied to any person on account of ... sexual orientation, gender identity or expression ... is unwelcome, objectionable or not acceptable, desired or solicited.

27.
protection from prejudice, intolerance, bigotry, and discrimination and disorder occasioned thereby, as provided by the stated policy set forth in New York State Executive Law § 290 (commonly known as "New York State Human Rights Law").

Who illegally discriminated against Mr. Miles based on his sexual orientation, miss managed Ms. Miles pain management, intentionally botched one procedure, intentionally make him suffer with his chronic pain conditions by not prescribing the appropriate medications, stopping a narcotic without titration, mishandling Ms. Miles complaints to the appropriate departments at NYPH patient services and absurd behavior by all employees of NYPH and its affiliates. Ms. Miles suffers from numerous chronic pain conditions. Dr. Siddiqi called Ms. Miles a "tranny" every time Ms. Miles was alone with Dr. Siddiqi and when he administered trigger point injections, he always called me a "Fagot." Suddenly Ms. Miles was told by Dr. Siddiqi's front office while in person at

the practice that he needed to find a new pain management doctor (Ms. Miles was prescribed Tramadol by Dr. Siddiq for 8 months or more) although Ms. Miles was there for an epidural to be performed by Dr. Mizrahi. Ms. Miles was then told by the front office staff that he could choose from a list of four medications that Dr. Mizrahi had on file for his patients. Ms. Miles refused as she had never seen Dr. Mizrahi for an in-person office visit or any visit and that Ms. Miles wanted a diagnosis before given medications for her chronic pain. When Ms. Miles had his epidural this day Dr. Mizrahi would called Ms. Miles a "tranny fagot," while and where nobody could see or hear prior to Ms. Miles epidural. This was a common occurrence every time Ms. Miles went in for an epidural. Ms. Miles began to cry and explained to Dr. Mizrahi that she wouldn't tolerate this behavior and needed pain medications. Dr. Mizrahi became enraged and said "Do you still want the epidural tranny?" I said yes, and want to note that when you play the recording of the 2nd epidural Dr. Mizrahi performs he notes that the tube is broke indicating a failed procedure to inflict intentional pain via an intentional unsuccessful epidural. Regardless the third epidural I asked on the recording if the broken tube was the reason the 2nd epidural didn't work and Dr. Mizrahi said no. A week later I had a zoom video conference with Dr. Mizrahi. I explained the medication he prescribed was ineffective so he recommended I try THC and that Ketamine was a good idea. I tried to get on these medications that Dr. Mizrahi recommended but because I live in poverty, I told Dr. Mizrahi through the NYP app that I could not get on these medications because of the cost and that I needed a medication that was covered by my insurance. I noted that I was suffering and that the pain effected my brain function. Dr. Mizrahi noted all of this and acknowledged my pain and suffering and stated he couldn't help me. Ms. Miles is not currently on a single medication that works for his chronic pain.  When Ms. Miles complained to patient services Magali Lopez kicked me out of the practice the day after I lodged the complaint that was endorsed by Emily Tan. Emily told me through an email that Magali Lopez endorsed my complaint.

I found a new doctor in Dr. Daniel Jung Pak. He told me on the zoom video call we had that he was going to prescribe Naloxone for me but doesn't notate this anywhere because it doesn't make sense and so when I complained to the appropriate department, I asked to have the video zoom call reviewed and disciplinary action taken and I have heard nothing. Dr. Pc was passively making fun of my condition and elongating my suffering.

Upon information and belief, the doctors' issues with Ms. Miles stemmed from his actual or perceived sexual orientation and gender identity. During his treatments, the doctors asked Ms. Miles why he was named ALI, a Muslim, a tranny, and dressed like a girl.

It is clear that the doctors wanted Mr. Miles to be remain in pain based upon his sexual orientation and gender expression. The doctors expressed aggression and hostility towards him during the entire course of his treatment but only in person and in private. NYPH. Indeed, as part of their scheme to make Ms. Miles suffer with his chronic pain.

Upon information and belief, the doctors send reports to management at 38 6th ave in Brooklyn NYPH, attempting to build a case to prevent Ms. Miles from obtaining medication for his pain appropriate based diagnosis. upon false and misleading evidence. Dr. Mizrahi is contradicting all his statements in the NYP app.

7

It is clear that Ms. Miles performed completely under the terms of his agreement with NYPH, and that the actual reason he was wrongfully managed was his actual or perceived sexual orientation and gender identity and in retaliation to Ms. Miles being Trans.

38. Pursuant to New York State Executive Law, Plaintiff is entitled to an award of prevailing party costs and reasonable attorneys' fees.

5

**SECOND CAUSE OF ACTION (New York State Executive Law § 296(6))**

Plaintiff repeats and realleges the allegations of paragraphs 1 through 38 above. New York State Executive Law § 296 provides, in relevant part, as follows:

39. 40.

41. against Plaintiff.

**THIRD CAUSE OF ACTION (New York Civil Rights Law § 40-C)**

1. Plaintiff repeats and realleges the allegations of paragraphs 1 through 33 above.
2. New York Civil Rights Law § 40-C states:

    Discrimination. 1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.

It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

6

2. No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability ... be subjected to any discrimination in his or her civil rights, or to any harassment ... in the exercise thereof, by any other person or by any firm, corporation, or institution.

48. Through his actions, Defendants discriminated and/or harassed Plaintiff Miles due to his actual or perceived sexual orientation and/or gender expression in direct violation of New York Civil Rights Law § 40-C.

49. In 2021 and 2022, Defendant, by and through their employee, engaged in and conducted unlawful discriminatory practices against Plaintiff.

1. Defendants' conduct has damaged Plaintiff in an amount to be determined at trial.
2. Although not plead separately, it is also alleged that Plaintiff is entitled to an award

of punitive damages against Defendants in an amount to be determined at trial based upon their willful, extreme, wrongful, and outrageous conduct.

**FOURTH CAUSE OF ACTION**
**(New York City Human Rights Law § 8-107.4)**

1. Plaintiff repeats and realleges the allegations of paragraphs 1 through 51 above.
2. New York City Human Rights Law § 8-107.4 provides, in relevant part, as follows:

   It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation:

1. Because of any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status, directly or indirectly:

2.
a. To refuse, withhold from or deny to such person the full

and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation; or

7

b. To represent to any person that any accommodation, advantage, facility or privilege of any such place or provider of public accommodation is not available when in fact it is available.

54. All people inhabiting the City of New York, including Plaintiff, are entitled to protection from the prejudice, intolerance, bigotry, and discrimination and disorder thereby, as provided by the stated policy set forth in New York City Administrative Code § 8-101 (commonly known as New York City Human Rights Law").

55. In 2021 and 2022, the aforementioned NYPH constituted a place of public accommodation, as defined in New York City Administrative Code § 8-102(9).

56. In 2021 and 2022, Defendants constituted providers of public accommodation, as defined in New York City Administrative Code § 8-102(9).

9

57. As described above, Defendants engaged in and conducted unlawful discriminatory practices against Plaintiff.

58. In 2021 asnd 2022, Defendants directly and indirectly ruined Miles.

59. Defendants' discriminatory conduct has damaged Plaintiff in an amount to be determined at trial.

60. Although not plead separately, it is also alleged that Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined at trial based upon their willful, extreme, wrongful, and outrageous conduct.

61. Pursuant to New York City Administrative Code § 8-502, Plaintiff is entitled to an award of prevailing party costs and reasonable attorneys' fees.

8

**FIFTH CAUSE OF ACTION**
**(New York City Human Rights Law § 8-107.6)**

1. Plaintiff repeats and realleges the allegations of paragraphs 1 through 61 above.
2. New York City Human Rights Law § 8-107.6 provides, in relevant part, as follows:

   Aiding and abetting. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

3. In 2021 and 2022, Defendants engaged in unlawful discriminatory practices

against Plaintiff.

65. In 2021 and 2022, Defendantsw, through its employees, servants, and/or agents, engaged in unlawful discriminatory practices against Plaintiff.

66. In 2021 and 2022, Defendants, by and through its employees, servants, and/or agents, engaged in acts of omission or commission to aid, abet, incite, compel, and/or coerce the doing of the acts forbidden under the chapter of the New York City Human Rights Law § 8- 107.6, and/or attempted to do so.

67. As a result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial.

68. Although not plead separately, it is also alleged that Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined at trial based upon their willful, extreme, wrongful, and outrageous conduct.

69. Pursuant to New York City Administrative Code § 8-502, Plaintiff is entitled to an award of prevailing party costs and reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION (Assault)**

70. Plaintiff repeats and realleges the allegations of paragraph 1 through 69 above.

9

71. In 2021 and 2022, Defendants verbally abused Plaintiff with provocative and homophobic language.

72. After verbally abusing Plaintiff, Defendants, without just cause or provocation, chased Plaintiff out of NYPH, while continuing to use homophobic and discriminatory language and threatening to fight the Plaintiff. This chase caused Plaintiff to experience physical and emotional injuries.

73. On the aforesaid date, Defendants, without just cause or provocation, intentionally, willfully, and maliciously did commit an assault on the Plaintiff with the specific intent to injure and harm Plaintiff.

74. In 2021 and 2022, Defendants intentionally threatened and placed Plaintiff in apprehension of imminent harmful and offensive contact.

75. Defendant NYPH is vicariously liable for the assault committed by its employee, Defendant doctors and employees.

76. As a result of the foregoing, Plaintiff was caused to sustain personal injuries and has been caused to endure pain, suffering, emotional shock, and suffering as a result of the foregoing actions.

77. As a result of the foregoing, Plaintiff has been damaged in a sum to be determined at trial.

78. Although not plead separately, it is also alleged that Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined at trial based upon their willful, extreme, wrongful, and outrageous conduct.

**SEVENTH CAUSE OF ACTION (Intentional Infliction of Emotional Distress)**

79. Plaintiff repeats and realleges the allegations of paragraphs 1 through 78 above. 10

80. In 2021 and 2022, Plaintiff entered the aforementioned NYPH.

81. In 2021 and 2022, Defendants called Plaintiff a "faggot" multiple times as well as "Tranny."

82. The acts complained of herein were extreme, outrageous, intolerable, and beyond the bounds of a civilized society.

83. Defendant Jesus knew, or reasonably should have known, that his verbal abuse and assault of Defendant would and did proximately result in physical and emotional distress to the Plaintiff and caused him to incur the costs of medical treatment and caused him to endure pain, suffering, disability, emotional shock, and suffering.

84. As a result of the actions of Defendants, Plaintiff is suffering.

85. Defendant NYPH is vicariously liable for the assault committed by its employees, Defendants.

86. As a result of the foregoing, Plaintiff has been damaged in a sum to be determined at trial.

87. Although not plead separately, it is also alleged that Plaintiff is entitled to an award of punitive damages against Defendants in an amount to be determined at trial based upon their willful, extreme, wrongful, and outrageous conduct.

**EIGHTH CAUSE OF ACTION**
**(Negligent Hiring, Screening, Retention, Supervision, and Training Under the Laws of the State of New York)**

88. Plaintiff repeats and realleges the allegations of paragraphs 1 through 87 above.

**(Title VII of the Civil Rights Act of 1964)**

14. Plaintiff repeats and realleges the allegations of paragraphs 1 through _____ above, as if more fully set forth herein.

15. NYPH engaged in unlawful practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §2000e-2(a)(1), by terminating MILES from the 38 6th Ave practice on the 3rd floor because of his actual or perceived sexual orientation and/or gender identity.

16. NYPH and Magali Lopez decision to terminate MILES was based on sex[1]. Terminated MILES because he is gay, because he is undergoing a gender transition, and/or because he did not conform to NYPH gender-based preferences, expectations, or stereotypes about how a man should dress and conduct himself.

17. The effect of NYPH unlawful practices was to deprive MILES of equal treatment and otherwise adversely affect his status as an employee, because of his sex.

18. Defendants unlawful employment practices were intentional and done with malice or with reckless indifference to Mr. Mile's rights under Title VII.

19. Defendants discriminated against Plaintiff in violation of Title VII by denying to him equal treatment and conditions, including but not limited to subjecting him to disparate conditions and denying him the opportunity to get out of pain.

20. Defendants has discriminated against Plaintiff in violation of Title VII by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile environment that included, among other things, widespread sexual favoritism in the workplace, the use of offensive and derogatory references to women, and forcing male colleagues to endure demeaning and offensive sexual demonstrations by female performers in nightclubs, which conveyed the message that women were viewed as "sexual playthings" and which promoted offensive stereotypes of women, thereby creating an atmosphere that was demeaning to women and which was both objectively and subjectively offensive to Plaintiff.

21. As a direct and proximate result of Defendant unlawful discriminatory

---

[1] "[I]t is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020).

conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic harm, for which he is entitled to an award of monetary damages and other relief.

22. As a direct and proximate result of Defendant Nordank's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self- confidence, emotional pain and suffering, as well as physical injury, for which he is entitled to an award of monetary damages and other relief.

23. Defendants unlawful and discriminatory actions constitute malicious, willful and wanton violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues of fact and damages stated herein.

Dated: New York, New York
April 16_, 2022

Respectfully submitted,

*Dylan Miles*